**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>**v.**<br><br>**HTC CORPORATION, et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-507**<br><br>**JURY TRIAL DEMANDED** |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>**v.**<br><br>**LG ELCTRONICS, INC., et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-508**<br><br>**JURY TRIAL DEMANDED** |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>**v.**<br><br>**PANTECH CO., LTD, et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-509**<br><br>**JURY TRIAL DEMANDED** |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>**v.**<br><br>**BLACKBERRY LIMITED, et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-510**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>v.<br><br>**ZTE CORPORATION, et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-511**<br><br>**JURY TRIAL DEMANDED** |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>v.<br><br>**AMAZON.COM, INC., et al.,**<br>Defendants. | **Civil Action No. 6:13-cv-568**<br><br>**JURY TRIAL DEMANDED** |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br>Plaintiff,<br><br>v.<br><br>**DELL INC.,**<br>Defendant. | **Civil Action No. 6:13-cv-569**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CELLULAR COMMUNICATIONS EQUIPMENT LLC'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS FOR FAILURE TO STATE A CLAIM[1]**

---

[1] Defendants filed motions to dismiss in lieu of answers in each of the above-captioned cases. Because each motion is substantively identical, Plaintiff serves this response in each case, citing to Plaintiff's original complaint in *Cellular Communications Equipment LLC v. HTC Corporation, et al.*, No. 6:13-cv-507 (the "HTC Complaint") as exemplary.  It bears noting that Plaintiff has not alleged willful infringement in *Cellular Communications Equipment LLC v. Dell Inc.*, No. 6:13-cv-569 (and Dell Inc. has not moved to dismiss on this point).  Thus, Section III.C is not applicable to Dell Inc.

The original complaints in these related lawsuits contain detailed allegations that meet, and regularly exceed, established requisites for pleading indirect infringement and willfulness. Thus, Plaintiff Cellular Communications Equipment LLC ("CCE") opposes Defendants' collective motions to dismiss for failure to state a claim (the "motions") as a concerted exercise in procedural gamesmanship intended only to delay addressing the merits.  For the reasons set forth below, Defendants' motions should be denied entirely.  Should the Court deem CCE's complaints deficient in any respect, CCE respectfully requests leave to amend.

## I.     INTRODUCTION

In each instance that CCE pled indirect infringement or made allegations of willfulness, it specifically addressed all required elements, establishing credible theories of liability consistent with the requirements of the Supreme Court, the Fifth Circuit, and the holdings of this Court.

## II.    LEGAL STANDARDS

Motions to dismiss are procedural vehicles reviewed under regional circuit law. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009).  "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted." *Inmotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 U.S. Dist. LEXIS 112630, at *3 (E.D. Tex., Aug. 10, 2012) (citing, among others, *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)).  "When considering a motion to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true, and view those facts in the light most favorable to the plaintiff."  *Achates Reference Publishing, Inc. v. Symantec Corp.*, No. 2:11-cv-294, 2013 U.S. Dist. LEXIS 27143, at *5-6 (E.D. Tex. Jan 10, 2013).

While Fed. R. Civ. P. 8(a)(2) requires only that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, the Supreme Court clarified in its *Twombly* and *Iqbal* opinions that providing the "grounds of [the pleader's] entitlement to

1

relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To this end, this Court has explained:[2]

> [A] complaint must allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *7 (E.D. Tex. Jul. 27, 2012) (citations to *Twombly* and *Iqbal* omitted).

The *Twombly / Iqbal* pleadings standard applies to allegations of indirect and willful infringement.  *See Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *9 (indirect infringement); *see also FuzzySharp Techs. Inc. v. Nvidia Corp.*, No. 12-cv-06375, 2013 LEXIS 126989, at *6 (N.D. Cal. Sept. 4, 2013) (willful infringement).  However, allegations of indirect and willful infringement are not viewed in a vacuum.  Analysis of pleaded content is a "***context-specific task that requires the reviewing court to draw on its judicial experience and common sense***." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added).  Moreover, the *Twombly / Iqbal* pleadings standard does not mean that a plaintiff "must prove itself at the pleading stage." *Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *16.

Lastly, while *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) sets forth the evidence necessary to establish willful infringement; "the bar for pleading willful infringement is not high."  *Wordcheck Tech, LLC v. Alt-N Technologies, Ltd.*, No. 6:10-CV-457, 2012 U.S. Dist. LEXIS 189071, at *6 (E.D. Tex. July 17, 2012).  All that is required is a plausible allegation of

---

[2] With respect to direct infringement, a plaintiff need only comply with Form 18.  *See, generally, In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).  Defendants raise no issue relative to the sufficiency of CCE's direct infringement allegations.

pre-suit notice coupled with the assertion that continued, alleged infringement is objectively reckless. *See id.*

## III.    ARGUMENT

### A.    CCE has fully pled a plausible theory of induced infringement.

A claim for induced infringement requires (1) pleading direct infringement, and pleading facts plausibly showing that the defendant both (2) intended that a third party infringe and (3) knew that the third party's acts constitute infringement. *Achates Reference Publishing*, 2013 U.S. Dist. LEXIS 27143, at *10.  Defendants here attack CCE's allegations concerning elements (2) and (3).

#### 1.    Knowledge of the patents.

In order to form the requisite intent (element (2)) and knowledge concerning third party infringement (element (3)), Defendants must, as a threshold matter, have knowledge of the patents asserted against them.  CCE's complaints establish Defendants' knowledge in one of two ways.

For the sole patent that has ***not*** been declared essential to practicing a standard,[3] CCE alleges that each Defendant had knowledge at least as early as service of the original complaint. Defendants argue that this is insufficient in ***other*** districts; but they ignore that courts in ***this*** district (and elsewhere) have held ***repeatedly*** that knowledge acquired from an original complaint satisfies the knowledge component of indirect infringement. *See Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *17 (citing *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-CV-242, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2013) and *In re Bill of Lading*, 361 F.3d at 1345-46). Indeed, the *Patent Harbor* court declined to follow *Aguirre v. Powerchute Sports*, No. 10-cv-

---

[3] U.S. Pat. No. 6,377,804 (the '804 patent").

702, 2011 U.S. Dist. LEXIS 65003 (W.D. Tex. June 17, 2011), cited by Defendants in support of their argument.  *See Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *17-18.

For patents that **are** declared essential to practicing a standard,[4] CCE's allegations go even further.  They allege that Defendants garnered pre-suit knowledge by virtue of their involvements with a standards-setting organization called the 3rd Generation Partnership Project (or "3GPP").  3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here.

Defendants disparage CCE's assertions as merely a "speculative possibility;" but there is nothing speculative about it.  Defendants (or their corporate affiliates) associate with 3GPP voluntarily and are provided notice of the patents declared essential to the standards that 3GPP publishes.

Defendants also compare CCE's allegations of pre-suit notice to those at issue in *Rembrandt Social Media, LP v. Facebook, Inc.*, 2013 U.S. Dist. 84245, No. 1:13-cv-158 (E.D. Va. June 12, 2013).  But the allegations in *Rembrandt* are manifestly different.  The *Rembrandt* plaintiff sought, unreasonably, to impute pre-suit knowledge of a patent to the defendant because the defendant: (i) worked with the same law firm as the prior owner of the relevant patent; (ii) acquired a patent that happened to cite the relevant patent as prior art; and (iii) was served with a lawsuit alleging infringement of a different patent that cited the relevant patent as prior art (the suit was dismissed before the defendant even answered).  *See Rembrandt*, 2013 U.S. Dist. 84245, at *16.  Thus, the *Rembrandt* court held that "none of these facts gives rise to anything more than a *conceivable possibility* of knowledge … rather than a *plausible inference* the defendant possessed such knowledge."  *Id.* (emphasis added).

---

[4] U.S. Pat. Nos. 6,819,923; 7,215,962; 7,941,174; and 8,055,820.

Here, CCE explicitly alleges that each Defendant (or its corporate affiliate) is a member of a specific standards-setting organization — 3GPP.[5]  It is well-known that 3GPP not only develops and publishes wireless communications standards, but ***actively encourages and solicits*** disclosure of patents essential to its work and maintains a register of such patents.[6]  Hence, CCE's allegation that each standard essential patent in these suits was disclosed to 3GPP has exceptional significance to 3GPP members, and the inference that Defendants knew about the standard essential patents-in-suit by virtue of their association with 3GPP is not only reasonable, but compelling.

Unlike in *Rembrandt*, Defendants' knowledge here flows *directly* from their voluntary association with 3GPP, rather than indirectly via contrived or attenuated connections.  Moreover, CCE need not ***prove*** that Defendants actually possessed knowledge of the patents at this juncture.  CCE needs only sufficiently plead the plausible, which it has done.  *See In re Bill of Lading*, 681 F.3d at 1339.

### 2. Intent to infringe.

CCE's original complaints very specifically satisfy the intent requirement (element (2)).  They allege direct infringement by Defendants, as well as their customers and end users.  *See, e.g.,* HTC Complaint, at ¶ 23.  The complaints also identify, by name, numerous infringing products.  In ¶ 22 of the HTC Complaint, for instance, CCE identifies seven different infringing HTC smartphones.  Defendants do not dispute these points.

Then when addressing induced infringement, the complaints expressly state that each Defendant specifically intends for its customers to use the identified products (among others) in

---

[5] *See, e.g.,* HTC Complaint , at ¶¶ 46, 61, and 74.
[6] *See* "3GPP – Legal Matters (IPR declarations)," available at http://www.3gpp.org/Legal-matters.

an infringing manner and that each Defendant "instructs customers and end users regarding use of the [accused] devices." *See, e.g.,* HTC Complaint, at ¶ 25.

In other words, Defendants tell their customers how to use the accused products to infringe.  There is no mystery to how this is accomplished.  It is well-known that Defendants package instructional materials (e.g., user guides/owner manuals) with their products and also publish those materials online.  Thus, Defendants' contention that CCE provides "no factual basis at all for its allegations" is simply false and ignores this "instruction" aspect of CCE's complaints.

CCE is not required marshal all of its evidence at this stage.  It need not identify specific documents to prove intent, and courts are permitted to use both judicial experience and common sense to infer that the instructions identified by CCE plausibly explicate the requisite intent.  *See Iqbal*, 556 U.S. at 679.

### 3.      Knowledge of third party infringement.

Defendants' knowledge of third party infringement (element (3)) is established by pleading facts that support a plausible inference that Defendants had knowledge of the patents. *See Achates*, 2013 U.S. Dist. LEXIS 27143, at *10-11 (finding that knowledge of patents established through service of a complaint is sufficient to draw a plausible inference that induced infringement has occurred).  As noted above, however, CCE's complaints not only establish Defendants' own knowledge (via the original complaints, 3GPP affiliation, or both), they expressly identify Defendants' "customers and other end users who use [the accused devices]" as direct infringers and further allege that Defendants provide instructions to customers and users pertaining to use of the accused devices.  These allegations taken together are more than sufficient to satisfy this pleading requirement.

### B.      CCE has fully pled a plausible theory of contributory infringement.

A claim for contributory infringement requires (1) pleading underlying direct infringement and plausible facts, to wit, (2) the accused infringer had knowledge of the patent, (3) the infringing component(s) has (have) no substantial non-infringing use, and (4) the alleged component(s) is (are) material to practicing the invention.  *See, e.g., Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *19-20.

Elements (1) and (2) are fully addressed in CCE's complaints.  Relative to element (1), and despite Defendants bald assertion that "CCE fails to meet any of the four requirements," Defendants do not actually argue in their motions that CCE failed to properly plead the underlying direct infringement.   Indeed, CCE specifically pled the underlying direct infringement, including repeatedly identifying infringing products and direct infringers (namely, each Defendant, its customers, and other end users).  *See, e.g.*, HTC Complaint, at ¶¶ 43, 45 (noting, among other things, that "Defendants are liable for indirect infringement because they induce and/or contribute to the **direct infringement of the patent by their customers and other end users** who use the '962 HTC Devices to practice the claimed methods.").

Relative to element (2), knowledge of each asserted patent is established, at minimum, by service of CCE's original complaints.  *See, e.g., Achates*, 2013 U.S. Dist. LEXIS 27143, at *7-8 ("[T]here is no requirement to allege pre-suit knowledge of the patent to state a claim for contributory infringement.").  Moreover, for the asserted standard essential patents, CCE alleges pre-suit knowledge via Defendants' respective involvements with 3GPP.

Relative to elements (3) and (4), CCE's complaints support the plausible inference that relevant components of the accused devices have no substantial non-infringing uses and are material to practicing the invention.  The identified infringing products are wireless devices comprising proprietary hardware components and software instructions that work in concert to

7

perform specific, intended functions.  These specific, intended functions are a material part of the inventions at issue and have no substantial non-infringing use.  Hence, CCE's allegations that Defendants' "products accused of infringing (and/or components thereof) are a material part of the inventions" and "are not staple articles of commerce suitable for substantial non-infringing use" are sufficient and proper.  *See, e.g.*, HTC Complaint, at ¶¶ 26, 48, 63, and 76.

CCE will more precisely identify specific hardware and software after discovery.  It is not necessary, however, to provide detailed factual support for each and every element at the pleadings stage.  *See, e.g., Twombly*, 550 U.S. at 555.  CCE's complaints set forth facts that plausibly support an inference that particular components of the accused devices are a material part of the invention with no substantial non-infringing use.  In context, these allegations adequately plead contributory infringement and should be upheld.  *See, e.g., Achates* 2013 U.S. Dist. LEXIS 27143 at *8-9 ("[I]n light of the nature of the patented technology and the accused components, the complaint states adequate facts to infer that the activation component has no other use than to perform the method steps.")

### C.      CCE has fully pled a plausible theory of willful infringement.

CCE's claims for willful infringement are similarly sufficient.  Citing *Seagate*, Defendants allege that CCE must establish both objectively reckless behavior or circumstances, and subjective knowledge or obviousness of the risk.  But conclusive proof of such elements is not required at this stage — CCE's complaints need only set forth a plausible claim in good faith. *See Wordcheck Tech, LLC*, 2012 U.S. Dist. LEXIS 189071, at *6 ("*In re Seagate* only addresses the evidence necessary to establish willful infringement, not the prerequisites for pleading willful infringement, let alone that anything more than a good faith allegation of willfulness is required.").  In fact, Defendants ignore case law cited in their own brief which clearly states:

> **The bar set by the Federal Circuit for stating a claim for willful infringement is not high.**  Indeed the Federal Circuit has held that a plaintiff 'more than sufficient[ly]' states a claim for willful infringement when he alleges **(1) infringement of the patent-in-suit; and (2) pre-filing 'knowledge' of the patent-in-suit.**

*FuzzySharp,* 2013 LEXIS 126989, at *6 (citing *Mitutoyo Corp. v. Cent. Purchasing, LLC,* 499 F.3d 1284, 1290 (Fed. Cir. 2007) and *In re Seagate* 497 F.3d at 1374) (emphasis added).

CCE alleges willful infringement relative to the asserted standard essential patents.[7]  As alleged, Defendants affiliated with 3GPP had pre-suit knowledge of the asserted standard essential patents.  Having such knowledge, Defendants disregarded an objectively high likelihood of infringement and thus their actions have been willful, wanton, and deliberate.  *See, e.g.,* HTC Complaint, at ¶ 36.  Accordingly, CCE's complaints properly allege both infringement and pre-suit knowledge of standard essential patents, and the willful infringement allegations should stand.   The task of marshalling additional evidence to prove willful infringement is one for discovery and expert reporting, not CCE's complaints.

## IV.    CONCLUSION

CCE has properly pled each element of indirect and willful infringement.  Defendants' motions ignore common sense and obfuscate the standards of *Twombly* and *Iqbal* to achieve procedural delay.  For the reasons set forth above, the motions should be denied in their entirety and Defendants ordered to answer the complaints.

Alternatively, CCE asks that it be granted leave to amend its complaints in order to address any pleading deficiency that the Court deems to exist.  *See, e.g., Patent Harbor,* 2012 U.S. Dist. LEXIS 114199, at *21 (granting leave to amend).

---

[7] In discussing CCE's willfulness allegations, Defendants protest that "CCE insufficiently alleges knowledge of the **'804 Patent** based on mere service of the complaint."  It should be noted that the '804 patent has not been declared essential, and CCE has not alleged its willful infringement.

**Dated: October 31, 2013**                    Respectfully submitted,

/s/ Edward R. Nelson III
Edward R. Nelson III
enelson@nbclaw.net
Texas State Bar No. 00797142
Brent N. Bumgardner
bbumgarnder@nbclaw.net
Texas State Bar No. 00795272
Barry J. Bumgardner
barry@nbclaw.net
Texas State Bar No. 00793424
S. Brannon Latimer
blatimer@nbclaw.net
Texas State Bar No. 24060137
Thomas C. Cecil
tcecil@nbclaw.net
Texas State Bar No. 24069489
Michael J. Fagan, Jr.
mfagan@nbclaw.net
Louisiana State Bar No. 33821
NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone:  (817) 377-9111
Fax:  (817) 377-3485

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
Claire Abernathy Henry
Texas State Bar No. 24053063
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Rd. Ste. 220
Longview, Texas  75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com
wh@wsfirm.com
ch@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 31st day of October, 2013.  As of this date, all counsel of record that has consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Edward R. Nelson, III*
Edward R. Nelson, III